IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00162-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **MATTHEW HORNUNG,**

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Beth Gibson, Assistant United States Attorney for the District of Colorado, and the defendant, Matthew Hornung, personally and by counsel, Brian Leedy, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

#### A. *Defendant's Obligations*

The defendant agrees to waive indictment and plead guilty to a one-count Information, charging him with travel with intent to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b) and (e). The defendant agrees not to seek a sentence of less than 10 years of imprisonment in exchange for the Government's agreements. Finally, the defendant agrees to waive his appellate rights, as set forth below.

Court's Exhibit

1

### B.     Government's Obligations:

In exchange for the defendant's plea of guilty, the United States agrees to the following: (1) to forego charges related to the defendant's possession of suspected child pornography in Pennsylvania in 2013 in light of the disposition in this case; (2) not to pursue in this District other offenses describe in the statement of facts or to file charges pursuant to 18 U.S.C. §§ 2241(c) and 2422(b), which respectively carry penalties of not less than 360 months and not less than 10 years; (3) not to seek an upward variance from the guideline range, provided the range finally calculated by the Court is consistent with or higher than that calculated below; and; (4) recommend the maximum reduction for acceptance of responsibility if the defendant does not engage in conduct that implicates § 3C1.1.  The government is not bound to request any particular period of supervised release and may well seek the maximum period.

### C.  Appellate Waiver

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria:  (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or the Court determines that the total offense level is higher than 33 and imposes a sentence above the sentencing guideline range calculated for that total offense level.  Except as provided above, the defendant also knowingly and voluntarily

waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742.

The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute; (2) there is a claim that the defendant was denied the effective assistance of counsel; or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

### D. *Abandonment of Seized Property*

The defendant agrees that the property seized from him and that is currently in the custody or control of Homeland Security Investigations was properly seized and that it is evidence, contraband, or fruits of the crimes to which the defendant is pleading guilty. The defendant relinquishes all claims, title, and interest the defendant has in such property with the understanding and consent that HSI may dispose of the property without any further obligation.

### E. *Effect of Withdrawal from Plea Agreement*

The Government may unilaterally withdraw from this Plea Agreement under any of the following circumstances: 1) if the defendant does not plead guilty to the Information; 2) if the Court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct appeal

or collateral attack; or 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal or remand of the count of conviction for any reason.

## II. **ELEMENTS OF THE OFFENSE**

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

One:   The defendant traveled in interstate commerce; and

Two:   the defendant traveled for the purpose of engaging in illicit sexual conduct.

"Illicit sexual conduct," as defined under 18 U.S.C. § 2423(f), means (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

"Sexual act," as defined under 18 U.S.C. § 2246, means (1) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (2) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (3) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or (4) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

Aggravated Sexual Abuse and Sexual Abuse of a Minor (18 U.S.C. §§ 2241 and

4

2243, respectively) are Chapter 109A offenses.

### III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 2423(b) and (e) is not more than 30 years imprisonment, not more than a $250,000 fine, or both, supervised release for not less than five years and up to life, and a $100 special assessment fee.

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury. If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

#### A. *Future Violations of Supervised Release*

A violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 3 years without credit for pre-release imprisonment or time previously served on post-release supervision; if the defendant commits any criminal offense under Chapter 109A, 110, or 117, or 18 U.S.C. §§ 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the defendant shall be sentenced to not less than 5 years and up to the maximum term of imprisonment for the offense.

### B. *Registration under the Sex Offender Registration and Notification Act*

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was convicted, where he resides, where he is employed, and where he is a student. The defendant understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he is or will be an employee or a student, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

## V.   STIPULATION OF FACTS

The parties agree there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement.   That basis is set forth below.   Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.   To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the facts are as follows.   In 2013, pursuant to a search warrant, law enforcement agents in Pennsylvania found suspected child pornography on the defendant's electronic devices.   More recently, the defendant was a member of a website that allows users with similar sexual interests to connect and share videos and images.   On that website, the defendant expressed a clear interest in incest and starting an "incest family" of his own or joining a family already engaged in incest.   He was a member of multiple groups on the website such as "fathers fucking daughters," "incestuous teens," and "family lovers club," among others.   On his profile page, he displayed photographs of himself, including one of him holding his penis in his hand.

On or about December 9, 2014, a Special Agent with Homeland Security Investigations ("UC") saw the defendant's profile on the website and assumed the undercover role of a mother with two daughters.  The UC asked if the defendant was "for real" and mentioned that she had two daughters.  The defendant replied by asking about the age of the purported daughters and whether the UC had already "trained them."  The UC told him she had a 14-year old and a 10-year old daughter.  From December 9, 2014, through March 28, 2015, the defendant and UC communicated via text and email message.  During that period, the defendant also communicated with a person he believed to be the 14-year-old daughter of the UC. In general terms, the defendant expressed he wanted to have a child with both the UC and the 14-year old.  He was excited at the idea of having a son who could have sex with his mother and two sisters.  He conveyed his clear interest in having oral, anal, and vaginal sex with the UC and both of her daughters.  He mentioned that he and the UC might have to train the daughters "how to properly please a man."  He inquired about the daughters' virginity and explained they would be the first virgins with whom he had sex.

Regarding the specific communications, the defendant acknowledges that the affidavit filed in support of the criminal complaint accurately captures his email and text communications.  See 1:15-mj-01043-NYW at Doc. 1-1.  As set forth in the affidavit, incorporated herein, he graphically described his plan to engage in "illicit sexual conduct" and "sexual acts" as defined by federal law and as detailed above.  The following communications capture some of his statements about his intent.  In a text message on March 7, 2015, when describing how "to teach" the daughters to "please their daddy," he suggested that they would "[f]irst teach them how to suck on [his] cock .

. . and [g]ive them their first taste of a man's special seed." On March 11, 2015, the defendant sent a photograph that included his penis and explained to the 14-year old that his penis was 7 inches and that she "would be surprised how much [she would] stretch." On March 18, 2015, the defendant asked the 14-year old whether she was "going to masturbate tonight thinking about daddy being there in a week. . . and daddy making you a woman." The defendant expressed that the 10-year old might be too young for vaginal intercourse and need more preparation. The defendant appeared not to regard her as too young for oral sex and hoped the girls would "squirt" in his mouth. He also conveyed that the daughters' "consent" was important to him and that he would not "push it" if they did not "enjoy" him.

On March 7, 2015, the defendant said he might drive to Denver in his Volkswagen and never return to Pennsylvania. The defendant continued to plan a trip to Denver. He indicated he would bring his laptop with videos of girls engaged in sex with their fathers for a movie night with the UC and her daughters. On March 27, 2015, the defendant drove from Pennsylvania in his Volkswagen in accordance with the plans he made with the UC. He crossed multiple state lines, including Ohio and Indiana, and crossed from Kansas into Colorado on March 28, 2015. He traveled with the intent of engaging in illicit sexual conduct and sexual acts with the UC, the 14-year old, and the 10-year old. The defendant was arrested in Colorado on March 28, 2015, after experiencing car trouble. In his car, the defendant had candy for the girls and his laptop, just as he had planned.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute. The defendant agrees and consents that facts that determine the offense level will be found by the Court, by a preponderance of the evidence, and that the Court may consider and use any reliable evidence, including hearsay and the facts outlined in the Presentence Report. The parties further agree that the stipulation of facts in this plea agreement will also be used by the Court in determining the sentencing guideline range.

The parties provide the following estimated guideline range for the Court's consideration pursuant to 18 U.S.C. § 3553(a)(4). The range and calculation of that guideline range is an estimate only, and the parties are not bound if the probation department determines that a different guideline range applies except to the extent set forth in Part I of this plea agreement. The Court may impose any sentence, up to the statutory maximum, regardless of any advisory guideline range computed, and the parties agree that the Court is not bound by any position of the parties.

To the extent that the parties disagree about the sentencing guideline computations, the recitation below identifies the matters which are in dispute.

**Offense Level:** The governing guideline is § 2A3.1.   *See* § 2G1.3(c)(3).

   A. The base offense level is **30.**

   B. Because one of the victims had not attained the age of 12 years, increase by **+4** levels.   § 2A3.1(b)(2); *see also* Application Note 1 defining "victim" to include an undercover law enforcement officer.

   C. Because the defendant used a computer, increase by **+2** levels. § 2A3.1(b)(6).

   D. The defendant should receive a **3-level** reduction for acceptance of responsibility.   *See* § 3E1.1 (a) and (b).

   E. The parties understand that the defendant's criminal history computation is tentative and that they are not bound by this estimate.   The criminal history category ("CHC") is determined by the Court based on the defendant's prior convictions.   Based on information currently available to the parties, it is estimated that the defendant is a CHC I.

   F. The adjusted offense level is **33.**

**Guideline Ranges:**

   G. The advisory guideline range of imprisonment resulting from an offense level of **33** and a CHC I is **135-168** months.   However, in order to be as accurate as possible, with the CHC undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 135 months (bottom of CHC I) to 293 months (top of CHC VI).   In any event, the guideline range would be lower than the statutory maximum of 360 months.

   H. Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the guideline fine range for this offense would be $17,500 to $175,000, plus applicable interest and penalties.

   I. Pursuant to guideline § 5D1.2(c), the term of supervised release shall not be less than 5 years and may be up to life.   Pursuant to a policy statement, the maximum period of life should be imposed because the conviction is for a sex offense.

## VI. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 6-2-15

_____
Matthew Hornung
Defendant

Date: 6/2/15

_____
Brian Leedy
Attorney for Defendant

Date: 6/8/15

_____
Beth Gibson
Assistant United States Attorney